# In the United States Court of Federal Claims

CONSTRUCTION HELICOPTERS INC.,

                *Plaintiff,*

v.

THE UNITED STATES,

                *Defendant.*

No. 23-805 C

(Filed: January 3, 2024)

Lee Dougherty, Effectus PLLC, Washington, DC, for plaintiff.

Daniel Roland, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**ORDER**
**Granting in Part and Denying in Part Plaintiff's Motions to Compel and Denying Plaintiff's Motion to Supplement**

**SILFEN,** *Judge.*

      Construction Helicopters, Inc. (CHI) filed two motions to compel discovery and a motion to supplement the administrative record. In its motions, CHI contends that additional documents and testimony are needed for this court to conduct effective judicial review of the complaint. The government opposes all of CHI's motions, arguing that CHI's motions fail to show the documents it seeks are necessary for judicial review, that CHI requests privileged communications, and that responding to CHI's requests would unnecessarily burden the government. The court finds that the some of the information CHI seeks will assist the court in an effective judicial review of CHI's claims. But the documents CHI seeks to add to the administrative record in its motion to supplement are not necessary for effective judicial review. Thus, this court **grants in part and denies in part** CHI's first motion to compel, **grants in part and denies in part** CHI's second motion to compel, and **denies** CHI's motion to supplement the administrative record.

**I.    Background**

      On June 21, 2023, CHI filed a first motion to compel and to conduct discovery and depositions. ECF No. 21. The government responded, arguing, among other things, that CHI's requests were overbroad and unnecessary for effective judicial review, but agreeing to correct the record with additional materials that it had located after producing the initial administrative record. ECF

No. 23. The court held a status conference to discuss the first motion to compel.[1] After the conference, the court issued an order staying the briefing schedule temporarily to give the government time to correct the administrative record. ECF No. 24. The government then filed a notice of corrective action and filed the corrections to the administrative record that were discussed in the status conference. ECF Nos. 34-35. On September 20, 2023, the parties filed a joint status report. The government reported that the Forest Service—one of three government entities that are involved in this bid protest, in addition to the Department of Defense and the Federal Aviation Administration (FAA)—had amended the solicitation the day before to address at least one of the issues raised in CHI's protest. ECF No. 40. The government then filed a second correction to the administrative record including that amended solicitation. ECF No. 43.

In October 2023, CHI filed a corrected second motion to compel, incorporating the requests from its first motion to compel that were not ruled on by the court. ECF No. 50. The government opposed. ECF No. 55. In its response, the government offered to voluntarily supplement the administrative record with communications between the Forest Service and the Department of Defense that occurred after the amendment to the solicitation. *Id*. at 9-10. CHI replied, still seeking additional documents and discovery. ECF No. 58.

Also in October 2023, CHI filed a motion to supplement the administrative record with additional documents. ECF No. 54. CHI attached documents cited in its motion for judgement on the administrative record, including declarations from the presidents of two of its competitors, email chains between the Forest Service and industry groups, an email from the Forest Service contracting officer, and CHI's acknowledgement of the amended solicitation. *Id*. at 1-2. The government opposed. ECF No. 56. It argued that CHI failed to show that supplementation is necessary for effective judicial review of the protest, for multiple reasons, including that most of the documents were created after the solicitation was amended and therefore do not shed light on the Forest Service's decision-making in amending the solicitation. *Id*. In reply, CHI argued that the documents are necessary to rebut the government's arguments that other contractors have said they can comply with the requirements of the solicitation. ECF No. 59; *see generally* ECF No. 57 at 8-11 (citing several proposals that state that they can comply with the solicitation's requirements). Both parties address these proposed additional documents in their respective motions for judgment on the administrative record.

**II.     Discussion**

"As a general rule, in determining whether an agency's actions are arbitrary or irrational, the 'focal point for judicial review ... should be the administrative record already in existence, not some new record made initially by the reviewing court.'" *Knowledge Connections, Inc. v. United States*, 79 Fed. Cl. 750, 759 (2007) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985)). "The task of the reviewing court is to apply the appropriate [Administrative Procedure Act] standard of review to the agency decision based on the record the agency presents to the reviewing court." *Florida Power*, 470 U.S. at 743-44. Limiting review to the record before the agency guards against the court using new evidence to "convert the 'arbitrary and capricious'

---

[1] The hearing was held on June 27, 2023, before Judge Ryan T. Holte. The case was reassigned to me on July 3, 2023. *See* ECF Nos 27-28.

standard into effectively *de novo* review." *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000) *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005).

This court's rules provides that the United States is required to "identify and provide … the administrative record in a protest case." RCFC App'x. C ¶21. The rules require the production of core documents and materials that may be relevant as part of the administrative record. *Id.* at ¶23. The rules provide a list of documents that may be included as core documents, "as appropriate," in the administrative record. *Id.* at ¶22. The documents that need to be included are those materials "developed and considered by the agency in making its decision." *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997) (citation omitted). Typically, draft internal deliberations and informal notes are not included as part of the administrative record. *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 168-69 (2011) (citation omitted).

Discovery in bid protest cases is generally limited and available only when the party seeking discovery offers "concrete and specific reasons—rather than nebulous assertions—as to why the discovery sought … is necessary." *DataMill, Inc. v. United States*, 91 Fed. Cl. 722, 732 (2010). "[D]iscovery is not permissible merely because the proponent of such measures believes that it will improve the court's understanding of a case." *AccelGov, LLC v. United States*, No. 22-1433, 2022 WL 17821101, at *2 (Fed. Cl. Dec. 14, 2022) (citation omitted). Discovery may be allowed if there is "[e]vidence of an inaccurate representation in the record." *Alaska Structures, Inc. v. United States*, 144 Fed. Cl. 80, 85 (2019); *see also Diversified Maint. Sys., Inc. v. United States*, 93 Fed. Cl. 794, 803–04 (granting discovery to review inaccuracies in the record).

There is not, however, a rigid rule that automatically limits the court's review to the agency-assembled record. *See GraphicData, LLC v. United States*, 37 Fed. Cl. 771, 779 (1997). Motions to supplement the administrative record "seek[] to add materials that the agency did not consider but [that] should be considered to permit a proper evaluation of the agency's decision." *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019). In bid protest cases, "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380 (quoting *Murakami*, 46 Fed. Cl. at 735). "The party seeking to supplement the administrative record bears the burden of demonstrating why the existing record is insufficient." *Price Gordon Servs. v. United States*, 139 Fed. Cl. 27, 50 (2018).

When ordering a party to supplement the record, the court is "required to explain why the evidence omitted from the record frustrated judicial review as to the ultimate question of whether [the agency action] was arbitrary and capricious." *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018). Without such an explanation, it is "an abuse of discretion to supplement the administrative record" or to "rely[] on the supplemental evidence to reach [a] decision." *Id.* at 1328, 1332; *accord Axiom*, 564 F.3d at 1380 ("[T]he trial court abused its discretion in this case" by failing "to make the required threshold determination of whether additional evidence was necessary."). Conclusory statements that the supplementary documents are necessary for effective judicial review are insufficient. *AgustaWestland,* 880 F.3d at 1332.

Parties may have discovery only of relevant, nonprivileged materials. *See* RCFC 26(b)(1). Communications between a government agency and that agency's counsel, as well as communications between a government agency and attorneys from the Department of Justice representing

the agency in litigation, fall under the attorney-client privilege. *See Blue Lake Forest Prods., Inc. v. United States*, 75 Fed. Cl. 779, 792 (2007); *see also* Fed. R. Evid. 501 advisory committee's note to 1974 enactment (explaining that attorney-client privilege applies to a "government, State, or political subdivision"). "However, since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose." *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also Energy Cap. Corp. v. United States*, 45 Fed. Cl. 481, 484 (2000) ("The assertion of privileges is strictly construed.").

The party asserting the privilege bears the burden of proof. *See Weil v. Inv./Indicators, Rsch & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981); *Evergreen Trading, LLC*, *ex rel. Nussdorf v. United States*, 80 Fed. Cl. 122, 127 (2007). Documents that fall under the deliberative process, attorney-client, or work product privileges are not included in the administrative record. *See Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) (citing *Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1457–58 (1st Cir. 1992)). Deliberative process documents include "internal memoranda made during the decisional process" and "are never included in a record." *Norris & Hirshberg v. SEC*, 163 F.2d 689, 693 (D.C. Cir. 1947); *see San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 45-46 (D.C. Cir. 1986) (en banc); *Portland Audubon Soc'y v. Endangered Species Comm'n*, 984 F.2d 1534, 1549 (9th Cir. 1993) (noting that "neither the internal deliberative process of the agency nor the mental processes of individual agency members" are proper components of the administrative record); *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.D.C. 2019).

### A. The record lacks sufficient information for the court to conduct effective judicial review of the FAA issue

As the parties discuss, the issue involving the FAA remains relevant to CHI's protest. The solicitation requires operators to "be civilly compliant with [FAA] Operating Certificates." ECF No. 48 at ¶48 (first amended complaint, citing AR 9730). According to CHI, the solicitation requires aircraft under the solicitation to be compliant with both FAA regulations and Army continued maintenance information, and these regulations are at odds with each other. CHI argues that if CHI follows the Army's maintenance messages "CHI's helicopters would no longer be considered airworthy by the FAA." ECF No. 48 at ¶¶52-53. CHI claims that if it loses FAA certification because of following the Army maintenance message, it would take "up to six months, and substantial amounts of money" to again comply with the FAA regulations. *Id*. at ¶54; ECF No. 53 at 28-30.

CHI's motions contain several requests relating to the FAA issue: CHI requests all emails and communications the FAA possesses relating to the complaint, the deposition of an FAA representative, a letter sent from the Forest Service to the FAA regarding the protest, and documents—beyond a memorandum the government already provided—explaining the latest amendment to the solicitation. *See* ECF No. 21 at 1-2; ECF No. 50 at 1-2.

The government responds that it has issued other solicitations with the same terms for more than a decade without grounding aircraft and points to documents in the administrative record that it asserts undermine CHI's position. *See* ECF No. 57 at 20-24.

As discussed below, many of CHI's requests are overbroad, the requested documents do not exist, or the requests are for privileged information. But after reviewing the record and the parties' arguments, both in the papers and at oral argument, the court is persuaded that limited additional information, provided in a less burdensome manner than a deposition from the FAA, may aid the court in conducting effective judicial review.

The issues CHI raises are central to CHI's complaint, and the documents relied on by both sides are insufficient. There are outstanding questions. For example, what effect will requiring offerors to comply with the relevant military message requirements have on the offerors' FAA certifications? The FAA's answers will help the court evaluate whether the Forest Service fully considered whether the offerors can follow the FAA regulations in an economically viable way, and whether the Forest Service considered the burdens on offerors from following both sets of regulations, for example when switching to civilian operation after a Forest Service mission. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (explaining that an agency's decision is arbitrary and capricious when the agency "entirely failed to consider an important aspect of the problem.").

The court will benefit from the FAA's non-privileged answers. The court discussed these issues at the hearing, and the parties agreed that some additional information from the FAA may help streamline this case. To facilitate streamlining the FAA issue, the court issued an order requesting that the FAA respond, in a document signed by an FAA official with authority to attest to the answers, to a limited set of interrogatories jointly submitted by the parties. ECF No. 67.

### B. CHI has not demonstrated that most of the discovery it seeks in its motions to compel is necessary for effective judicial review

CHI's motions to compel otherwise fail to meet the high bar for discovery in bid-protest cases. Much of the requested discovery is not necessary for effective judicial review; many of the requested documents are privileged or do not exist;[2] and many were created after the solicitation was amended, making them not relevant to the agencies' consideration of whether or how to amend the solicitation.[3]

---

[2] The government states that documents responsive to requests 3 and 4 of CHI's second motion to compel do not exist. *See* ECF No. 55 at 9 n.4, 12-13. The government explains that those requests stem from a statement by DOJ counsel at a status conference that the Forest Service may be preparing a letter, but the letter in question was never finished or sent to the FAA. *Id*. at 12-13. Any unfinished draft would not be part of the administrative record. *See Norris*, 163 F.2d at 693.

[3] CHI's second motion to compel incorporates the requests that were listed in the first motion. The discovery CHI seeks in its second motion does not match the discovery requests listed in its memorandum supporting that motion. Because the requests in the memorandum are more comprehensive than those listed in the motion, the court considers the requests in the memorandum to be CHI's full set of requests. *Compare* ECF No. 50 at 1-2 *with* ECF No. 50-1 at 21-22.

### 1. Most of the requests in the first motion to compel are overbroad and unnecessary for the court to conduct effective judicial review

The document requests in CHI's first motion to compel are overbroad, and many of them are moot after the government's first correction to the administrative record. ECF No. 23 at 14; *see also* ECF No. 34 (government's correction to the administrative record).[4]

In its first motion to compel, CHI sought "[a]ny documents … in the possession of [the Army, the FAA, or the Forest Service] with information related to the Complaint." ECF No. 21 at 1. Even if discovery in bid protests were more permissive, CHI's requests are overbroad, as they do not provide any boundaries that would limit the burden on the agencies. *AG–Innovations, Inc. v. United States*, 82 Fed. Cl. 69, 86 (2008) ("'[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries.'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947))); *see also Pac. Gas & Elec. Co. v. United States*, 69 Fed. Cl. 323, 326 (2005) (ordering plaintiff to narrow discovery requests by identifying certain limits).

Further, the government voluntarily corrected the administrative record with "correspondence with the FAA and Army that directly relate to the dispute in this protest" that fell into "one or more of CHI's requested documents." ECF No. 23 at 14. CHI's second motion to compel does not comment on the more than 200 pages of agency emails with the FAA and Army that the government included in the August 2023 supplement to the record. ECF No. 34. If additional non-privileged communications between the agencies exist beyond those included in the current record, CHI does not meet its burden to show that those documents would be necessary for this court to conduct effective judicial review of the complaint. *See Price Gordon Servs. v. United States*, 139 Fed. Cl. 27, 50 (2018) ("The party seeking to supplement the administrative record bears the burden of demonstrating why the existing record is insufficient."). CHI's motion fails to explain how the various categories of documents are necessary for effective judicial review of the record, and how the documents it seeks are not represented in the current record.

CHI also seeks to depose "key individuals" including Gerald Dwyer from the Army. ECF No. 21-1 at 1-2. CHI contends that the depositions are necessary because the record has inconsistencies that can be fixed only through deposition testimony, and that the Department of Justice is not representing the interests of its clients, the FAA and the Army. ECF No. 21-1 at 16-17. CHI further argues that Mr. Dwyer stated, in administrative-record emails, that the military messages, required for a bidder to satisfy the terms of the solicitation, are unavailable to the industry and that a party who gets that information may "risk criminal prosecution." *See* ECF No. 21-1 at 6-8. According to the government, Mr. Dwyer presents a biased analysis of the laws on military-message information, and CHI has not identified any supporting evidence to suggest that a contractor has ever been prosecuted for having that information. ECF No. 23 at 19.

As an initial matter, in a suit that is based on a closed administrative record, it is exceedingly rare for a court to allow depositions. *See Impresa Construzioni Geom. Domenico Garufi v.*

---

[4] The four document requests in CHI's first motion to compel are collected as the first request in its second motion to compel. ECF No. 50-1 at 21 ("1. All documents requested by the First Motion to Compel, as this Court has not yet provided a ruling").

*United States*, 238 F.3d 1324, 1338-40 (Fed. Cir. 2001) (recognizing that in administrative record cases deposition testimony should be ordered only in "rare circumstances"); *see also Bear Mountainside Realty LLC v. United States*, No. 23-457, 2023 WL 4399993, at *7 (Fed. Cl. July 7, 2023) (depositions in bid protests should only be allowed as "a last resort"). Depositions are limited to circumstances where the party challenging an agency action has a specific reason to believe there is information that cannot be gathered from the existing written record. *Office Depot, Inc. v. United States*, 94 Fed. Cl. 294, 296 (2010) ("A court may order depositions to supplement the administrative record when 'the record [i]s inadequate to' explain a contracting officer's procurement decision." (quoting *Impresa*, 238 F.3d at 1337)).

Here, as the government points out, Mr. Dwyer is not employed by any of the agencies whose actions are being challenged in this suit; instead, he is an outside contractor for the Army and is not authorized to take actions on behalf of the Army. ECF No. 23 at 18. It is just speculation to argue that he or someone else might ask another agency to prosecute CHI or any other bidder for obtaining military-message information. Furthermore, CHI does not identify specific information that it might get from Mr. Dwyer that would help in this court's review process. CHI has not presented the compelling case that would be required for the court to order Mr. Dwyer's deposition.[5]

Even if the court were to construe CHI's request for deposition testimony as a request for the testimony of any Army witness with decision-making power, CHI's request remains uncompelling. CHI seems to argue that there must be something nefarious happening because Mr. Dwyer believes that bidders are not allowed to receive military-message information. But the government has already revised its solicitation, based on CHI's protest, and explained publicly in the revised solicitation that the Army will provide the military-message information to the Forest Service and authorize the Forest Service to provide it to the successful bidders. AR 10784-87. The amendment to the solicitation explains that the Forest Service Airworthiness Branch will provide applicable military messages from the Department of Defense directly to contractors. AR 10786 (contracting officer memorandum discussing the amendment). At the hearing on CHI's motions, the government stated that the memorandum of understanding will be signed within weeks and that the government will supplement the record with the memorandum as soon as it is signed by the Army and the Forest Service. CHI agreed that pending review of the memorandum it will set aside any requests for documents relating to the military message issue. The government has since supplemented the administrative record with the signed memorandum of understanding. ECF No. 68.

### 2. Privileged communications are not necessary for effective judicial review of the record, and the government need not produce a privilege log of those discussions

CHI seeks discovery of privileged discussions. Those have been properly excluded from the administrative record.

---

[5] The parties dispute whether Mr. Dwyer's apparent ties to the industry, and possible financial interests in this suit, would make him a biased witness. ECF No. 23 at 18-19; ECF No. 65 at 8-10. In finding that the court does not need Mr. Dwyer's testimony for effective judicial review, the court need not address Mr. Dwyer's possible financial interest in this litigation.

CHI seeks communications between the Forest Service and the Army regarding the military message issue. ECF No 50-1 at 21-22 (requests 5, 6 and 9). CHI also seeks communications between the Forest Service and the FAA, and related documents, about statements from the contracting officer that "[t]he FAA has been unwilling to give a generalized statement about the Forest Service's contract requirement," and that "[t]he FAA understands and supports the Forest Service's conservative safety philosophy when it comes to the military messages." *Id.* at 21-22 (requests 7 and 8) (quoting AR 10784-85). To the extent that documents exist for any of these requests, the government contends that they all "reference privileged discussions involving DOJ counsel and the Army or FAA, many of which were by telephone or videoconference." ECF No. 55 at 11-12. CHI contends that these documents are not privileged and must be included as part of the record under Appendix C of the rules of this court. *See* ECF No. 58 at 4. CHI contends, alternatively, that if the court determines these are privileged documents, the government should produce a privilege log explaining the documents and the asserted privilege for each. *See id.* at 6-8. CHI also argues that if counsel is making decisions for the government rather than giving advice, those communications are not privileged. ECF No. 50-1 at 11-12; *see* ECF No. 58 at 4.

CHI's does not support this last contention with any authority. Even if CHI's argument had a basis in law, CHI does not provide evidence that counsel in this case is "making decisions" on behalf of the Forest Service rather than providing legal advice.

CHI also misunderstands the statements in Appendix C of this court's rules. CHI contends that the documents listed in Appendix C "are required to be included in the Record." ECF No. 58 at 4; *see* ECF No. 50 at 3; ECF No. 53 at 34 n.10. Appendix C reads, in relevant part, "[t]he core documents relevant to a protest case may include, as appropriate" before listing the set of documents that CHI cites. RCFC App'x C ¶22. The list of documents in the rules is a permissive list of the types of documents that may appear in the administrative record, and the language in the rules, "as appropriate," comports with the general rule that documents "developed and considered by the agency in making its decision" should be included in the administrative record. *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997) (citation omitted); *see Insight Pub. Sector, Inc. v. United States*, 157 Fed. Cl. 398, 406 (2021) ("The 'core documents' listed in Appendix C do not define mandatory contents of an administrative record."). Nowhere in Appendix C are privileged communications required, and the absence of certain types of documents in an administrative record does not support broad discovery.

The government is correct that conversations with counsel, particularly after a suit has been filed, are privileged. There is no requirement for the government to log each privileged conversation because privileged conversations are not part of the administrative record. *See, e.g.*, *Tafas* 530 F. Supp. 2d at 794. The only authority CHI relies on, *Trace Systems Inc. v. United States*, 160 Fed. Cl. 691, 694 (2022), does not require the government to provide a privilege log for all privileged conversations. In *Trace Systems*, the court asked the government to provide a privilege log where the court suspected the current record was not complete because there were citations to documents not found in the record, and the record contained only a small number of documents relevant to the challenged decision. *Id.* at 696-97. Here, CHI cites the Forest Service's decision memorandum, in which the contracting officer describes agreements with the FAA and the Army. *See* ECF No. 50-1 at 8-10; ECF No. 58 at 4-8 (citing AR 10784-85). According to the government, all of the cited quotations "reference privileged discussions involving DOJ counsel and the Army or FAA,

8

many of which were by telephone or videoconference." ECF No. 55 at 11-12. CHI has not provided a reason to disbelieve the government on this point.

CHI further argues that government counsel is misrepresenting the discussions it is having with the Forest Service, the FAA, and the Army. *See, e.g.*, ECF No. 50-1 at 11; ECF No. 58 at 1 (implying DOJ is misleading or lying to the court regarding documents in the administrative record); ECF No. 58 at 10 ("[T]he Government is not being entirely candid with the facts or is brazenly committing perjury."). CHI claims that there is "substantial evidence in the cherry-picked documents that are in the Record" to support its position that government counsel has not prepared the record "in accordance with the rules of the court." ECF No. 58 at 1. CHI relies on the government's decision to voluntarily correct the record twice earlier in the case. *Id.* at 1-3. CHI also argues that the timeline of events presented by government counsel does not work, because, according to CHI, documents show that the Department of Defense first talked to the Forest Service after the decision to amend the solicitation was made. *Id.* at 12 (citing ECF No. 55-2 at 2, 14, 23-24).

CHI overstates the relevance of the government's corrections to the record, and CHI's arguments regarding the timeline do not overcome the presumption of regularity that is given to government officers. *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). This presumption assumes that DOJ is talking with and representing all of its clients, including the Forest Service, the FAA, and the Army. CHI bears the burden of demonstrating that the government's counsel is not acting properly. *See Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001) (explaining the presumption of regularity allows courts to presume what appears regular is regular, and the burden shifts to the attacker to show the contrary).

The presumption of regularity, that DOJ is speaking with its clients, is supported by the timeline of the case. The government voluntarily made its first corrective action in response to CHI's first motion to compel. *See* ECF Nos. 20, 21, 34. The corrected record includes correspondence between the Forest Service and the FAA and Army related to the dispute. ECF No. 34-1. Those documents were included before briefing on the administrative record began. The government corrected the record a second time shortly after the Forest Service amended the solicitation, adding documents directly related to the amendment that were created after the administrative record was originally filed. ECF No. 43-1. The government did not intentionally withhold these documents from CHI; they did not yet exist.

The emails CHI relies on to undermine the presumption of regularity (AR 10547-549) do not contradict the government's assertion that its counsel has had discussions with other Army officials in amending the solicitation. These emails indicate that there was once a disagreement between the Army and the Forest Service, and the government represents that this disagreement has been resolved via privileged communications. *See* ECF No. 55 at 15-16 (citing AR 11082-83; AR 10784). The government has now provided a memorandum of understanding between the Army and the Forest Service. ECF No. 68. CHI's arguments do not persuade the court that DOJ is misrepresenting the case or support additional discovery beyond what the court has ordered above.

### 3. Documents created after the latest amendment to the solicitation are properly excluded from the record

The remaining requests in CHI's motion relate to documents that were created after the agencies' decision-making process in the most recent amendment and are therefore not needed for the court to conduct effective judicial review of the decisions to issue the solicitation and to amend the solicitation. These requests include (1) communications between the Forest Service and industry groups, (2) an email from the contracting officer regarding the solicitation, and (3) signed acknowledgements submitted by other offerors. ECF No. 50-1 at 21-22 (requests 11, 12, and 13). CHI fails to demonstrate that the court needs extra-record, post-decision evidence that was not before the decision-maker to conduct effective judicial review. *See AgustaWestland*, 880 F.3d at 1331 ("The purpose of limiting judicial review to the record actually before the agency is to guard against courts using new evidence to convert the arbitrary and capricious standard into effectively de novo review." (marks omitted)).

First, CHI seeks to supplement the record with emails between the Forest Service and two industry associations, the United Aerial Firefighters Association (UAFA) and the Helicopter Association International (HAI). ECF No. 50-1 at 17-20. CHI contends that these communications show that the Forest Service understands and believes that the current solicitation is flawed and will need to be amended. *Id*. According to CHI, the Forest Service's attempt to resolve the concerns of the industry associations is an acknowledgement of a defect in the solicitation. *Id*.

CHI is incorrect. The emails from the industry groups, HAI and UAFA, are not relevant to the current record. They do not involve a proposal that the Forest Service has acted on, and they may or may not result in a change to the solicitation. The communications may show that the current solicitation is not ideal, but that is not the standard; what matters is if the agency acted arbitrarily and capriciously in reaching its decision. *AgustaWestland*, 880 F.3d at 1332 ("[T]he ultimate question [is] whether [the agency action] was arbitrary and capricious."). If, at some future point, the Forest Service amends the solicitation because of those discussions, then the communications with other interested parties might become part of the record.

Second, CHI focuses on an email from the contracting officer. ECF No. 50-1 at 17-18. The contracting officer wrote, "[a]s it stands it is a known circumstance that this will not be, nor cannot be the last amendment as there are other factors to weigh for the future in consideration with the [Court of Federal Claims] protest, time that this solicitation has been on the street, pricing etc." ECF No. 50-4. CHI argues that this statement indicates that the Forest Service is aware that the solicitation as amended is flawed. ECF No. 50-1 at 17-18.

CHI's interpretation of the contracting officer's statement regarding a future amendment is not supported by the record. The contracting officer did not mention the substance of the solicitation but instead focused on details that would necessarily change because time has passed since the solicitation was amended. She did not state that the solicitation would have to be amended substantively, much less that it would have to be amended with respect to the military-message requirement. Taken together with the amendment, which tells bidders that the proposals will likely need to be refreshed at a future date (AR 10789), the contracting officer's statements acknowledge only that the Forest Service will not be able to award the contract based on the current bids.

10

The contracting officer's emails to other interested parties are post-decisional documents that did not factor into the Forest Service's decision to amend the solicitation. The communications between the Forest Service and the industry organizations, HAI and UAFA (ECF Nos. 50-2 through 50-5), have yet to result in any agency action, and therefore they are not part of the administrative record. If the agency amends the solicitation again as a result of those communications, then the emails and related documents might become part of the administrative record, as they may be related to that future decision-making process.

Third and finally, CHI sent a letter noting its discontent with the amendment while acknowledging receipt. ECF No. 54-6. CHI requests that the government supplement the administrative record with CHI's letter and any other letters received from other offerors. ECF No. 54 at 1.

CHI's letter and any other letters from other offerors were not before the Forest Service when it chose to make the amendment and do not represent the Forest Service's decision-making; allowing these documents would be an abuse of discretion. *See Axiom*, 564 F.3d at 1380. The government argues that Appendix C of this court's rules, discussed above, cannot mean that the government must amend the record every time it receives any communication from a party regarding the solicitation, as a rule like that could lead to an endless cycle of amending the solicitation. ECF No. 55 at 19-20. The court agrees.

CHI has not demonstrated that the documents it seeks to add to the administrative record are relevant to the Forest Service's decision-making process. Those documents cannot be added to the record.

### C.  The documents CHI seeks to add to the record were created after the Forest Service's decision on review and are not necessary for effective judicial review

For the reasons just discussed, CHI's motion to supplement also fails. Every document CHI seeks to supplement the record with was created after the solicitation was amended, making it not relevant to the agencies' consideration of whether or how to amend the solicitation.

Some of the documents in the motion to supplement, including emails between HAI and the Forest Service, the UAFA proposal to the Forest Service, and CHI's letter acknowledging the most recent amendment of the solicitation, are similar or identical to documents CHI requested in its motion to compel. *Compare* ECF No. 50-1 at 17-20 *with* ECF No. 54 at 1-3.

The remaining documents—two letters from other offerors to the solicitation—are similarly unnecessary for effective judicial review. CHI contends that the industry letters demonstrate that the "industry collectively disagrees with the Forest Service[] … [and] this is not merely an issue only being raised by CHI." ECF No. 54 at 2-3.

In addition to being post-decisional, these letters are from parties that are interested in the outcome of this litigation. They are also not relevant to the Forest Service's decision-making process. Both the Brainerd and Croman letters are from other bidders, both state that they have an interest in the outcome of this litigation, and neither claims to represent the industry as a whole. ECF Nos. 54-1, 54-2. Neither letter is a declaration made under oath. And even if they were viewed as equivalent to declarations, this court has routinely rejected declarations that were not before an

11

agency when it made a decision. *See L-3 Commc'ns EOTech, Inc. v. United States,* 87 Fed. Cl. 656, 672 (2009) (striking declaration that contained "post-hoc contentions of fact and argument" that were not before the agency when it made the decision at issue); *PlanetSpace, Inc. v. United States*, 90 Fed. Cl. 1, 6 (2009) (striking declaration that was "devoted entirely to re-arguing the merits of [the agency's] award decision"). Because CHI has not shown that any of the documents it seeks to supplement the administrative record with are necessary for effective judicial review, doing so would be an abuse of discretion. *AgustaWestland*, 880 F.3d at 1328, 1332; *Axiom*, 564 F.3d at 1380.

### III.   Conclusion

For the reasons stated above, this Court **grants in part and denies in part** CHI's first motion to compel, **grants in part and denies in part** CHI's corrected second motion to compel, and **denies** CHI's motion to supplement the administrative record. The government shall file its answers to the court's questions, listed in ECF No. 67, by January 15, 2024.

**IT IS SO ORDERED.**

 s/ Molly R. Silfen
MOLLY R. SILFEN
Judge